# JUNE TERM, 1889.

DAVID W. DAVIS v. ELLEN HAMMOND AND GEORGE H. HAMMOND, ADMINISTRATORS, ETC.

*Contract for payment of sum on determination or settlement of suit to test validity of patent—Construction—Failure of title—Evidence of settlement.*[1]

The contract sued upon is construed to provide for the payment of the sum stipulated for therein, in case of the settlement of the pending suit for the infringement of the patent assigned to defendants' intestate, regardless of whether the condition of the title to said patent would permit of a successful prosecution of said suit to decree or not, and, the jury having found the fact of such settlement upon sufficient evidence, the judgment below is affirmed.

Error to Wayne. (Gartner, J.) Argued October 31, 1888. Decided June 7, 1889.

Assumpsit. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Sumner Collins (Ashley Pond, Charles M. Swift,* and *George H. Lothrop,* of counsel), for appellants.

*Corliss, Andrus & Leete (Alfred Russell,* of counsel), for plaintiff.

MORSE, J. June 16, 1868, William Davis obtained letters patent of the United States for improvements in apparatus for preserving meats, fruits, etc., and on June 22, same year, caused the same to be assigned to himself, Samuel H. and

---

[1] For full digest of points decided, see "*Table of Cases Reported.*"
75 MICH.—1.

David W. Davis, to whom the patent was reissued September 15, 1868. Subsequently the interest of William Davis became vested in Thomas B. Rayl, a brother-in-law of Samuel H. and David W. Davis.

On July 1, 1869, Samuel H. and David W. Davis and Rayl licensed George H. Hammond and Caleb Ives to use the invention covered by the patent for transporting fruits and other perishable articles in refrigerator cars, the license fee being one-sixth of the profits. March 8, 1872, this license was enlarged so as to permit Hammond and Ives to relicense other persons to run their refrigerator cars.

·Some time before September, 1880, Samuel H. Davis, Thomas B. Rayl, and John B. Corliss, as assignee in bankruptcy of David W. Davis, filed a bill in equity in the superior court of Detroit against Hammond and the bankruptcy assignees of Ives, praying for an account.

On the twenty-seventh of August, 1880, George H. Hammond, in his own name, and in the name of his licensors, began suit in the circuit court of the United States for the district of Massachusetts against Francis Jewett & Co., of Boston, for damages for infringement. Both this suit and the superior court suit were pending September 18, 1880.

On September 18, 1880, Samuel H. Davis and Thomas B. Rayl, in consideration of $4,000, as therein expressed, executed an assignment to George H. Hammond of the patent referred to, which recited—

"That at the execution and delivery of this instrument they [the grantors] are the lawful owners and holders of said invention, as secured by said letters patent, and of every interest and right therein, except such licenses as have been given for the use thereof for stationary boxes not used for transportation, and such rights as have been granted to said Hammond and Ives as hereinabove stated, and that they have good right and authority to make such conveyance."

On the same day the suit in the superior court of Detroit was discontinued by stipulation, and a contract entered into

between George H. Hammond of the first part, and David W. Davis, Thomas B. Rayl, and Samuel H. Davis of the second part.

This contract related to the suit then pending in the circuit court of the United States for the district of Massachusetts, known in the record as the "Boston suit," and recited that George H. Hammond was then the assignee and owner of the letters patent, and also the possessor of the right to recover damages for any infringement of said letters patent at any time before the same were assigned to Hammond, and the commencement of the "Boston suit."

It contained the following agreements:

"Now, in case it shall be decreed by said circuit court that the said letters patent, so granted on the sixteenth day of June, 1868, and reissued on the fifteenth day of September, 1868, as above set forth, are valid, then, upon such final decree being rendered in said circuit court sustaining the validity of said patent upon the third and fourth claims thereunder, and without reference to exceptions or appeal to or from the decree or judgment of said court to the Supreme Court of the United States, or in case said first party shall make a settlement of the matters in said suit without proceeding to final decree, the said party of the first part shall pay to the parties of the second part, their executors, administrators, or assigns, the full sum of ten thousand dollars, for the use and benefit of themselves, or their representatives or assigns.

"It is further agreed that the parties of the second part shall render all service in their power to secure and furnish such testimony as may be necessary to establish the rights and claims of said party of the first part, in suits pending or to be brought, and without compensation except for necessary expenses incurred by them in this behalf."

The plaintiff sues upon this contract, representing himself and the interests of Samuel H. Davis and Rayl, which he has acquired by assignment.

The suit is brought against the defendants as administrators of George H. Hammond, now deceased, and was tried in the circuit court for the county of Wayne, upon the theory

that the consideration of Hammond's promise in said agreement was the discontinuance of the suit in the superior court, and the settlement of all claims and demands against Hammond, and the firms with which he was connected, and also the further consideration that Rayl and the Davises would render all service in their power to secure and furnish such testimony as might be necessary to establish the rights and claims of Hammond to the letters patent, and the damages for infringement thereof in said "Boston suit;" that the Davises and Rayl performed their part of the agreement in every respect, and thereby Hammond received the full benefit of the consideration upon which his promise was based; that Hammond settled the "Boston suit," and then permitted it to be dismissed for want of prosecution, whereby, under his said promise and agreement, he became liable to the plaintiff and his assignors for the full sum of $10,000, which he refused to pay.

The question whether or not the "Boston suit" was settled by Hammond was specially submitted to the jury, who found that it was, and brought in a general verdict against the defendants for the sum of $14,258.35, that being the amount of $10,000, with interest from the date of the agreement.

It is claimed that the court below erred in confining the examination of the case by the jury to the question whether or not the "Boston suit" was settled. The contract seems plain enough. The Davises and Rayl had, on the eighteenth day of September, 1880, assigned all their interest in the letters patent to Hammond, and discontinued their suit against him, and acknowledged settlement for all claims and demands against him or any of the firms with which he was connected. He paid them $4,000, and was to further pay them for this assignment and surrender of their claims as follows: In case he succeeded in establishing the validity of the letters patent, the sum of $10,000, or, in case he made a settlement of the

matters in suit without proceeding to final decree, the same sum; and, in case he recovered any damages, he was to further pay one-sixth of the net amount of such recovery.

The Davises and Rayl were therefore deeply interested in the outcome of the "Boston suit," and it is evident that they intended by this agreement to receive at least $10,000 more for their interest in the letters patent and their claims against Hammond.

They therefore provided against any compromise or settlement between Hammond and the defendants in the "Boston suit" that might stop short of a decree sustaining the validity of their letters patent. In either event of such decree, or a settlement without such a decree, they were entitled by the agreement to $10,000.

The consideration of this agreement was the relinquishment of their claims against Hammond, and their assignment to him of their interest in the patent, and their promise to aid him in the establishment of his claim in the "Boston suit."

The testimony shows beyond question that they were willing and ready to perform this promise, and therefore the consideration was complete.

It is contended by the counsel for the defendants that the true meaning of the contract is that Hammond should make a settlement in a suit which he could have prosecuted to a final decree upon the merits, and that, under the facts shown in reference to the title of the patent, for the infringement of which the "Boston suit" was brought, such suit could not have been successfully prosecuted by Hammond, and he could have voluntarily dismissed it without making himself liable to the payment of the $10,000.

They requested, on behalf of the defendants in the court below, that a verdict be directed against the plaintiff for this reason.

We do not agree with this contention. By the agreement

a settlement of the case by Hammond, without going to trial, no matter what the condition of his title was, fixed his liability to pay. The contract on his part was to pay the Davises and Rayl a certain sum of money in either one of two contingencies,—the establishment of his right to recover for the infringement in the "Boston suit" by final decree, or a settlement of the matters in controversy by him without suit.

It may be that the condition of his title was such, as received from the Davises and Rayl, that he might have voluntarily discontinued his suit, or submitted to such discontinuance on motion of the defendants in that suit; but if he settled the suit, and then submitted afterwards to the discontinuance, then he was liable under this agreement.

There is not found anywhere in the record any warranty of title to Hammond beyond the promise to furnish all the evidence in their power necessary to establish the rights and claims of Hammond against the defendants in the "Boston suit," and in suits to be brought.

The defendants claim that the title to the patent was so defective that Hammond could not maintain to a successful termination the suit against the Boston parties, and this claim is based on the following facts:

October 14, 1877, David W. Davis assigned to Minna Alpern, of the city of Alpena, Michigan, an undivided half of another patent, and his undivided third interest in the letters patent involved in this case, and assigned to Hammond as heretofore noted. She transferred her interest to Isbell & Merrill of Detroit. As the assignment was first made it was not limited. Each party had a duplicate of the same. But soon thereafter a supplemental contract was made, confining the sale in said assignment to "Alpena, Alpena county, Michigan." This contract, Davis claims, was also executed in duplicate, and to be attached to the original assignments. He attached it to his copy, but Mrs. Alpern did not annex it to her duplicate. She had her copy

of the assignment recorded in the patent office March 22, 1879, but did not record her duplicate of the supplemental agreement limiting said assignment.

The assignment to Isbell & Merrill was made in November, 1880, and was general, and unlimited as to territory.

March 26, 1881, the Davises, Rayl, and Hammond filed their bill of complaint in the circuit court for the county of Wayne, in chancery, against Minna Alpern and Isbell & Merrill, claiming that the transfer to Minna Alpern was, by the agreement and understanding between her and David W. Davis, confined to her own use exclusively, and included only the sale of the territory within the city of Alpena, Michigan, and that the first assignment was drawn as a general assignment by the mutual mistake of the parties, which was afterwards corrected by the supplemental agreement, that Minna Alpern, at the time of these assignments, was a married woman, and all the negotiations for the sale to her by Davis, and for the sale from her to Isbell & Merrill, were conducted by her husband, Casper Alpern, who signed said agreements in her name, and that he had full power and authority to thus act for her in both instances.

The bill also averred that Isbell & Merrill had full knowledge of all the facts concerning the assignment and supplemental contract between her and Davis before and at the time of the assignment to them, for which they paid nothing, as it was considered of no value.

The bill prayed for the reformation of the assignments, confining them to Alpena county, and an injunction against any transfer or assignment by the defendants of their apparent legal interest in the patents. This bill was supported by the affidavit of Casper Alpern, the husband of Minna, and a temporary injunction was granted as prayed in the bill.

The Davises and Rayl were ready to furnish the testimony to conduct this suit to a successful termination, as well as the

"Boston suit," but Hammond, for some reason, failed to prosecute either.

March 8, 1882, the following order was entered in the "Boston suit":

"On motion of defendants, the complainants, by their counsel, being present and objecting, this cause is dismissed for want of prosecution, with costs taxed at ———."

There was evidence tending to show, principally by the declaration of Hammond, that the matter was settled before this order was made.

The jury found this to be so, and we are not disposed to hold that there were not sufficient evidence and circumstances in the case to warrant such finding.

It is claimed by the counsel for the defendants that the counsel for the defendants in the "Boston suit" became aware of this defect in the title of Hammond; that this assignment of Davis' interest to Minna Alpern was a perfect defense to Hammond's claim in that suit. If this be conceded, still, if Hammond settled the suit with them, he is liable under his contract.

It is further claimed that there was no evidence of such settlement sufficient to be submitted to the jury.

We think differently. The record shows that the "Boston suit" was dropped, or settled, as the case may be, by Hammond without any consultation with Davis, or any notice to him. It was concealed from him until he learned it from other parties. The testimony also tends to show that Hammond had the control and management of the suit against Alpern and Isbell & Merrill, and that said cause was settled and dismissed by stipulation, without costs, December 8, 1882, just nine months after the discontinuance of the "Boston suit." Hammond and his successors have been conducting the business ever since of using this patent, and took no steps afterwards against the defendants to these suits. Ham-

mond told one witness that he had settled the "Boston suit," and settled it satisfactorily. Several others testified to his saying that it was settled, but that was all he said.

The testimony of these last witnesses has but little weight standing alone, as he might make such a remark if he had voluntarily abandoned the suit, or been forced to do so; but, taken in connection with the testimony that he said it was settled satisfactorily, and also the evidence of another witness that Hammond said to Samuel H. Davis that he had "compromised" the suit, and that he would make the $10,000 "contract or note" satisfactory with him and Rayl, "but he didn't care to have D. W. insult him any more about this thing at his office," it had a tendency to support the claim that the suit had been settled by Hammond to his satisfaction.

The testimony of these witnesses, the plaintiff, under the statute, being precluded from testifying in relation to what Hammond said about it, and the circumstances of the discontinuance of these suits, with the full benefit of these letters patent left in the hands and enjoyment of Hammond, were sufficient to warrant the jury in finding that there was a settlement of the "Boston suit."

It certainly was the duty of Hammond to push his suit against the Boston parties to decree or defeat, or, if he was satisfied he could not successfully maintain his suit because of the fault of Davis in not conveying to him a perfect title, it was his duty to acquaint Davis of this fact, and to repudiate his agreement with him because of such defective title. He could not, without any complaint or notice to Davis, settle the matter with the Boston parties, "compromise" the matter with them "satisfactorily" to himself, and then, after he had accomplished the purpose of his suit, say to Davis, in effect:

"It is true I have settled this suit to my satisfaction, but I am not obliged to perform my agreement with you, because I did not obtain a perfect title from you."

The court was right in submitting the case solely upon the question of settlement. There was no dispute about any other material fact. This question was fairly submitted. The jury were told that the "Boston suit," as appeared by the court records, was dropped or discontinued for want of prosecution; that this did not indicate a settlement, nor did it indicate that there was not a settlement,—it merely indicated that the suit was dropped; that the burden of proof was upon the plaintiff, and he must show, by a preponderance of testimony, that the suit was settled before he could recover.

From the whole record I am satisfied that the suit in Boston was not discontinued or allowed to be dismissed because of any fault or imperfection in the title conveyed to Hammond, but for the reason that Hammond had made a satisfactory compromise with the defendants Swift and Jewett in that suit. Their testimony, for some reason, was not taken in this cause, but enough appears to show that since the discontinuance of the suit there has been no conflict between them and Hammond, or those succeeding to his rights. The title held by Isbell & Merrill does not trouble any more after the suit against them and Mrs. Alpern is "settled and dismissed by stipulation." It would appear from all the facts and circumstances in the case that the full benefits of this patent have been enjoyed by Hammond since the settlement was made, and, under my view of the case, the $10,000 was rightly adjudged to Davis, as there were no errors in the admission or rejection of testimony.

The judgment is affirmed, with costs.

SHERWOOD, C. J., and LONG, J., concurred with MORSE, J.

CAMPBELL, J. As the argument in this case took a rather wider range than was authorized by the record, it is necessary to refer to the precise character of the controversy, as laid before us by the only means of information we legally possess.

The suit in which plaintiff prevailed below was for the alleged breach of a contract whereby the late George H. Hammond bound himself in a certain contingency to pay the assignors of plaintiff $10,000, and certain other possible profits.

The declaration contains two counts, which differ from each other in no important respect, except that the first declares for a breach arising out of the discontinuance of a suit in Boston, and the other for a settlement of the same suit before discontinuance. These are the breaches alleged, and no other.

The contract, dated September 18, 1880, which was set forth in its exact words in the declaration, in which Hammond was party of the first part, and David W. Davis, Thomas B. Rayl, and Samuel H. Davis were parties of the second part, recites that Hammond was assignee and owner of a certain patent right, which was issued by the United States to William W. Davis, Samuel H. Davis, and David W. Davis, and was also assignee of the right to recover for damages previous to the assignment of the patent to him, and that he had begun a suit in equity in the United States court in Massachusetts to recover damages for infringement, and to establish the validity of the patent, and had employed counsel for the purpose, and proposed and intended to have said action proscuted with all reasonable speed and dispatch. The contract then proceeded in this way:

"Now, in case it shall be decreed by said circuit court that the said letters patent, so granted on the sixteenth day of June, 1868, and reissued on the fifteenth day of September, 1868, as above set forth, are valid; then, upon such final decree being rendered in said circuit court sustaining the validity of said patent upon the third and fourth claims thereunder, and without reference to exceptions or appeal to or from the decree or judgment of said court to the Supreme Court of the United States, or in case said first party shall make a settlement of the matters in said suit without proceeding to final decree, the said party of the first part shall

pay to the parties of the second part, their executors, administrators, or assigns, the full sum of ten thousand dollars for the use and benefit of themselves, or their representatives or assigns.

"It is further agreed that the parties of the second part shall render all service in their power to secure and furnish such testimony as may be necessary to establish the rights and claims of said party of the first part, in suits pending or to be brought, and without compensation except for necessary expenses incurred by them in this behalf.

"And said Hammond further agrees that from the amount so recovered by him for damages in said suit shall be paid all the expenses and costs of such suit for the recovery of damages, including counsel fees and all expenses of litigation, and, after such deduction of costs and expenses, the said Hammond shall pay to the parties of the second part one-sixth of the net amount of the recovery, so far as the recovery is for damages on account of the use of said invention for the purpose of transportation."

Plaintiff is averred to be assignee of this contract, which is not disputed. After averring readiness to furnish testimony, as agreed, the breach alleged against Hammond is that he—

"Willfully and carelessly neglected and refused to prosecute said suit in equity with all reasonable speed and dispatch, and hath hitherto wholly neglected and refused, and still does neglect and refuse, to prosecute said suit, although often requested so to do, but, on the contrary thereof, he, the said defendant, hath allowed said suit to be dismissed for want of prosecution."

The second count sets up the same breach, but states in addition that the said George H. Hammond had, in fact, before said suit was dismissed, made a settlement of the matters in said suit.

Upon the trial it appeared that, as a part of the transaction, and on the same day the agreement sued on was dated, an assignment was made by Samuel H. Davis and Thomas B. Rayl, whereby they assigned to Hammond the entire patent interest, and the right to collect damages for all previous infringements, and covenanted and agreed—

"That at the execution and delivery of this instrument they are the lawful owners and holders of said invention, as secured by said letters patent, and of every interest and right therein, except such licenses as have been given for the use thereof for stationary boxes not used for transportation, and such rights as have been granted to said Hammond and Ives as hereinbefore stated, and that they have good right and authority to make such conveyance."

It appears, therefore, that the whole arrangement was that, in consideration that Hammond received from the plaintiff's assignors an absolute and complete legal title to the patent in question, which would enable him to successfully proceed against any infringers, if the patent itself was valid, and which would therefore enable him to prosecute the Boston suit successfully against the defendants in it if the patent should not be ineffectual and if they were guilty, Hammond would pursue that suit to a termination, and would pay the sum of $10,000 and a share of the net damages if the patent was held valid in the circuit court, or if he settled the suit before decree he should pay the $10,000.

The declaration follows this idea strictly, and charges a voluntary dismissal of the suit, and a settlement under which that dismissal was had or permitted. The charge of the court shut out from the consideration of the jury everything but the one fact of a settlement of that suit, and would allow no other inquiry.

It is only by disregarding the real issue made under the declaration, as well as the facts on which there was no dispute, or on which testimony was rejected by the circuit judge, that the charge and the rulings below can be maintained at all.

The judge confined the jury to the second count of the declaration, and told them they must only inquire whether there was "a settlement of the Boston suit." He told them it appeared from the evidence that the Boston suit was discontinued for want of prosecution; that the discontinuance only indicated that the suit was dropped, and that they must

inquire whether there was a settlement.    The only question submitted to them specially was in this form: "Was there a settlement of the Boston suit?" This was answered affirmatively.

The court refused a series of charges on facts which were beyond controversy, to the effect that the undisputed testimony showed that one-third of the legal title of the patent had previously been conveyed to one Minna Alpern, who held it when the agreement was made; that Mr. Hammond had no such title as would enable him to prosecute the Boston suit successfully; that the consideration was not proved as alleged; and some other points not in our judgment necessary now to consider.

All of the testimony introduced to prove a settlement consisted of various statements of Hammond proved by witnesses, some of which had a tendency to show that he stated the suit or matter was settled. There was no testimony having any tendency to show that Hammond admitted that the suit was discontinued after such a settlement, or in consequence of it.

Neither was there any proof of the nature of such a settlement, or with whom it was made.

By the agreement on which Mr. Hammond was sued in this cause it was contemplated that there should be no obstacle for want of title in him to sue. The other parties covenanted that his title was perfect, and agreed to furnish all necessary testimony. He agreed to bear all the expenses, which were only to be repaid out of the proceeds of the suit; and, if he had been vested with the title, there could never have been any need of resorting to another suit, and he would have been saved all the expenses that were lost. Both the declaration and the charge go upon the theory that this Boston suit was the sole subject of agreement, which was discontinued by his voluntary act after settlement.

It became, therefore, a vital question whether the suit was

one which they had given him the means of maintaining, and which dropped because he chose under some settlement to drop it.

The court below practically told the jury that the suit was dropped and discontinued, and only left it to them to say whether it had been settled; and, as no settlement was declared on except one in advance of the discontinuance, this is the only thing that could have been of any consequence, or which defendants could have been called on to meet.

But the record, and the only evidence in the case on the way the suit was ended, shows that it was not discontinued at all, but was dismissed on argument, and against Hammond's objection, for want of prosecution. The testimony further showed conclusively that he had no such title as would, under the patent laws, allow him to prevail in such a suit, and that the reason why he had no such title was that the parties represented by plaintiff, with whom he made the agreement sued on here, had themselves divested their own title, and did not and could not convey it to him, and that he must necessarily be defeated in that proceeding. Had the jury been properly informed that there was no suit in Boston that he could have sustained, and that he was prevented by plaintiff's default from doing so, they could not possibly have found as they did. The consideration for the agreement utterly failed, and there was no breach of the undertaking shown.

Furthermore, the court below throughout used the word "discontinuance," which is a word that has no application to anything but a voluntary ending of a suit. The record, as already suggested, showed an involuntary and hostile ending. But the court below, in addition to this, refused to allow the admission of evidence to show that the defendants in the Boston suit, who had found out Hammond's want of title, gave repeated notices to Hammond's counsel to proceed in the cause, or that a dismissal would be moved for want of

prosecution, and that the dismissal actually had was so produced, as it so appeared of record. It was going a good way to place any stress on such loose and contradictory statements of what Hammond said, with nothing to show when or how a settlement was made. But it was certainly open to defendants to show that no settlement was made at all under which the suit came to an end, and that Hammond was put out of court unwillingly, because, by reason of plaintiff's assignors' own default, he had no possible standing in court.

The judgment below cannot be sustained on the pleadings and proofs, and the court should, as requested, have ordered judgment for defendants. But the same class of errors will be found throughout to have arisen from a departure from the record, and a failure to recognize the true state of the title and the respective rights of the parties.

In our view the judgment should be reversed.

CHAMPLIN, J., concurred with CAMPBELL, J.