FREDERICK H. HITCHCOCK v. SAMUEL H. DAVIS, DAVID W. DAVIS, AND THOMAS B. RAYL.

[See 75 Mich. 1.]

*Attorney and client—Agreement for compensation—Settlement—Receipt—Evidence—Burden of proof—Charge to jury.*

An attorney who had agreed with clients, in consideration of the receipt of a share of certain claims when collected, to render certain professional services without charge, commenced a suit prior to such collection to recover for professional services, but without referring in his declaration to said agreement, and on a settlement of the suit gave a receipt for a specified sum, "in full of all claims in the above-entitled cause *and of all accounts.*" There had been some correspondence between the parties prior to such settlement, and from which it appeared that the attorney supposed that his right to a share of the uncollected claim under said agreement could not be enforced, because of the inability of his clients to collect said claim, while they considered the claim as still in effect, and that the attorney was entitled to the agreed share of the same in case it was collected. After the death of the attorney a suit was brought to recover said claim, in which the plaintiffs recov-

ered a final judgment (see *Davis v. Hammond*, 75 Mich. 1),
after which the administratrix of the attorney's estate assigned
the agreement to a third person, and the assignee brought suit
to recover the share of the claim agreed to be paid to the
attorney. On the trial the defendants introduced the receipt as
evidence of a settlement of the claim sued upon with the attor-
ney in his life-time, and also contended that he neglected and
refused to render the services provided for in the agreement,
notice of which defenses was given with defendants' plea of
the general issue. And in reversing a judgment in favor of
the defendants the Court hold:

*a*—That the burden of proof was upon the defendants to
establish the alleged settlement; and that, as soon as any evi-
dence was introduced by the defendants tending to establish
the second defense, the burden of proof was upon the plaintiff
to show that the attorney performed his agreement, or was
ready and willing to do so.

*b*—That the receipt, standing alone, would hardly warrant a
court or jury in finding that it was given on a settlement of
the claim sued upon, but that it was for the jury to deter-
mine from the receipt, and the facts and circumstances attend-
ing its execution, what was settled by it; and that whether or
not the words "all accounts" would embrace said claim was
not so certain as to create any legal presumption for or against
such settlement.

*c*—The court erred in referring in his charge to the absence
of the assignee at the trial, he having no knowledge of the
facts in issue, and it being immaterial whether he was present
or not, as long as attorneys were present who were fully
authorized to represent him in the conduct of the trial.

Error to Wayne. (Brevoort, J.) Argued June 19,
1891. Decided October 9, 1891.

*Assumpsit.* Plaintiff brings error. Reversed. The facts
are stated in the opinion.

*Charles Flowers*, for appellant.

*Corliss, Andrus & Leete*, for defendants.

MORSE, J. The plaintiff, as assignee of Theodore

Romeyn, deceased, brought suit in the Wayne circuit court based upon the following contract:[1]

"It is agreed between Samuel H. Davis, Thomas B. Rayl, and David W Davis, of the first part (jointly and severally), and Theodore Romeyn, of the second part, as follows:

"*First.* The contracts of the 2d September, 1879, and all obligations resting upon or springing from them, are relinquished.

"*Second.* The said first parties having settled their difference with George H. Hammond, of Detroit, and he having agreed to pay to them certain sums on conditions and at the times specified in a certain contract between them and him dated the 18th September, 1880, the said first parties (jointly and severally) agree with said Romeyn to pay to him, for value received, one-fourth part of whatever said Hammond shall pay to them, being twenty thousand dollars in hand, and ten thousand dollars when the validity of certain patents for refrigerator-cars shall be established by the judgment or decree of the circuit court of the United States for the first circuit of Boston, Massachusetts, as is more fully set forth in the agreements between the parties of the first part hereto and said Hammond.

"Whatever said first parties may receive from said Hammond for damages recovered in his name against the infringers of said patents for preserving and transporting meats and fish and other perishable articles shall be divided equally with said Romeyn.

"Said Romeyn, on his part, agrees to give his professional services, including advice and the trial of matters in court, in any suits or other proceedings to establish the validity of said patents, or to recover damages for their infringement, without any charge against the parties of the first part or said Hammond, but he is not bound to leave for such purposes the city of Detroit.

"The patents referred to are those of the Davis refrigerator boxes and cars, dated 16th June, 1868, to William Davis, and re-issued on 15th September, to him

---

[1] Theodore Romeyn died July 22, 1885, and January 20, 1890, the administratrix of his estate, with the consent of the heirs and pursuant to an order of the probate court of Wayne county, assigned the contract to the plaintiff.

jointly with Samuel H. Davis and Thomas B. Rayl, and the patent to David W. Davis for improvement in refrigerators, number 220,915, dated on the 28th October, 1879.

" [Signed]       THEODORE ROMEYN.
" [Signed]       S. H. DAVIS,
                 " By His Attorney in Fact,
                     THOMAS B. RAYL.
      " THOMAS B. RAYL.
      " DAVID W. DAVIS."

—And claimed under it one-fourth of the judgment obtained by defendants against the estate of George H. Hammond in the Wayne circuit court, and affirmed in the Supreme Court (see *Davis v. Hammond,* 75 Mich. 1); the full amount of said judgment amounting to $15,819.

The defendants pleaded the general issue, and gave notice that they would prove a settlement with said Romeyn in his life-time in full satisfaction and discharge of his claims under said contract, and, further, that he neglected and refused to give his professional services, and that there was an entire want and failure of consideration on the part of said Romeyn for said contract.

The defendants had verdict and judgment on a trial in the court below. No exception is taken to the admission or rejection of evidence, but a large number of errors are assigned upon the charge of the court to the jury.

It is contended by plaintiff's counsel that his case was *prima facie* established by showing the contract, and the payment to defendants of the judgment, which was based on the fact that Hammond settled the suit in the United States court at Boston referred to in the agreement sued upon. The agreement, in thus referring to the suit in Boston, also refers to an agreement between the defendants and Hammond. That agreement provided, among other things, that Hammond should pay the defendants $10,000 in case he should recover in the Boston suit, or

should make a settlement of the matters in said suit without proceeding to a final decree. The judgment obtained by the defendants against the Hammond estate was grounded upon such settlement, which was established in their suit against the Hammond estate upon their contract with Hammond. The court instructed the jury that the burden of proof was upon the plaintiff to make out his case. The plaintiff's counsel insists that the burden of proof was upon the defendants to establish a settlement with Romeyn of his claim under this contract. This is true, as it was a matter strictly of defense, and must be shown by the defendants. But under the second defense, that Romeyn had violated his part of the contract by neglecting or refusing to perform the services agreed to be given in the contract, although this was made a matter of defense by the plea and notice of the defendants, still, as soon as any evidence was introduced tending to show such neglect or refusal, the burden of proof was upon the plaintiff to show that Romeyn performed his contract, or stood always willing and ready to do so. The court erred in not properly separating these two defenses, and applying the rule as to the burden of proof to each of them.

The fourth request of plaintiff's counsel was as follows:

"The evidence shows that the said Romeyn commenced a suit against the defendants in this case in the superior court of Detroit, which suit was settled and discontinued. The receipt offered in evidence purports to be a settlement of all matters embraced in that suit, and, unless said receipt expressly shows a settlement of matters other than those embraced in said suit, it cannot be construed to be a settlement of Mr. Romeyn's claim under this contract, there being no evidence in this case to show that his claim under this contract was embraced in that suit. The claim under said contract had not accrued at the time of the settlement and discontinuance of said suit, and did not accrue until the payment of the ten

thousand dollars provided for in said contract, by the said Hammond or his representatives, namely, after final judgment was obtained against said Hammond or his estate in this court, and until said judgment was satisfied."

The court stopped at the word "contract," and refused to give the balance of the request, commencing, "there being no evidence in this case to show," etc.

The receipt which was put in evidence, after being entitled in the cause, reads as follows:

"Received, Detroit, June 8, 1885, of Thomas B. Rayl and Samuel H. Davis, per C. I. Walker, their attorney, ninety-three ($93) dollars, in full of all claims in the above-entitled cause and of all accounts. They have also paid seven ($7) dollars towards the costs in said suit. Said suit is to be discontinued without costs to either party.

"(Sd.)        THEODORE ROMEYN,

"By JAMES W. ROMEYN,

"His Attorney in Fact.

"June 8, 1885.

"Received seven dollars for disbursements in above suit, and in settlement thereof, in addition to the above amount paid plaintiff in person.

"(Sd.)    DICKINSON, THURBER & HOSMER,

"Plaintiff's attorneys.

"June 11, 1885."

Theodore Romeyn commenced the suit in which this receipt was given against these defendants February 26, 1885, filing his declaration in *assumpsit* for professional services. A bill of particulars of his demand was also filed, but could not be found on this trial. The declaration makes no reference to the contract upon which the present suit is based. It is admitted that Romeyn received his one-fourth of the $20,000. The plaintiff's counsel contends that the words, "and of all accounts," cannot refer to Romeyn's share or claim to a share of the $10,000, because at that time no money had been received by defendants from Hammond, and there seemed

but little likelihood of anything being obtained from
Hammond on account of the Boston suit; that the suit
in which defendants recovered this $10,000 and interest
was not commenced until August 27, 1886, over a year
after Romeyn's death, which occurred July 22, 1885, and,
if it had been intended to settle this claim, the contract
would have been referred to in the receipt. We think
the receipt itself, without any other testimony, would
hardly warrant a court or jury in finding that it settled
this claim upon the contract. But there is some cor-
respondence which is significant. August 25, 1884,
Romeyn wrote the defendants the following letter:

"DETROIT, August 25, 1884.
"*To David W. Davis and Samuel H. Davis and Thomas
B. Rayl:*
"I have an unsettled claim against you for legal services
in the suit of David W. Davis, Samuel H. Davis, Thomas
B. Rayl, and George H. Hammond against Minna Alpern,
William B. Isbell, and Emma J. Merrill in the Wayne
circuit court. The suit which Mr. Hammond was prose-
cuting in the United States circuit court in Boston was
dismissed for want of prosecution, and under such cir-
cumstances as would probably exempt Mr. Hammond
from every liability upon his contract to pay $10,000,
though Mr. Trowbridge and Mr. Kane, counsel for David
W. Davis, do not concede this; as Mr. Hammond, by the
terms of his contract, was only to pay in case he got
judgment in the court in Boston, or if he 'should make
settlement of the matters in said suit without proceeding
to final decree.'
"Hammond's counsel here say that he was forced to
buy out Mr. Isbell, to whom Alpern had made some con-
veyance, and that you, S. H. Davis and D. W. Davis,
refused to pay what was necessary to pay Isbell, and that
the suit in Boston was dismissed against the wishes and
consent of Hammond and his counsel for want of prose-
cution, and that Hammond was forced to this step in
consequence of the title. that had been given to Alpern.
"I put my claim for services and disbursements, for
clerical work and court fees, and so forth, at a very low
figure, namely, five hundred dollars.

"In speaking to Judge Walker about it, he said that he had no instructions or authority, and that it was best to address you directly.

"On December 29, 1882, I wrote to yourself, Mr. Rayl, and the two Davises, upon the subject of my fees in this matter, but ·nothing has been done towards paying me. I therefore give notice that, unless I. hear from you within a reasonable time concerning the settlement of this matter, I will be compelled to take legal proceedings against you, although I should very much prefer an arrangement without suit. I said to Judge Walker this morning that I was entirely willing to submit my claim to him and abide by his decision. . He declined to accept the responsibility, and said I had better address you. I am willing to submit the matter to arbitration. Let me hear from you soon.

"Yours truly,        THEODORE ROMEYN."

To which David W. Davis replied as follows:

"CLEVELAND, August 27, 1884.
"THEODORE ROMEYN,—

"*Dear Sir:* Yours of August 25, 1884, inclosing a copy of letter to T. B. Rayl and S. H. Davis, received. I think you presume too much in this note, and that you have no claim whatever for any legal services in the Hammond matter. The arrangements that I made with you in regard to the suit settlements against Hammond were all settled with you *except your interest in the $10,000 agreement of Hammond, of which you will receive your share just as soon as it can be collected.* * * * *

"Respectfully,        D. W. DAVIS."

It is evident from these letters that Romeyn supposed his claim for one-fourth of the $10,000 could not be enforced, because the defendants would not be able to recover it from Hammond, while Davis considered the contract in force, and that Romeyn was entitled to such share in case the $10,000 was ever collected. The letter shows that Romeyn at that time was claiming pay outside of the contract, for services· rendered in the Wayne circuit court; and it is claimed by the defendants on this trial that this letter, and the suit brought by Romeyn

against them subsequently, is evidence that Romeyn failed to perform his contract, and consequently the plaintiff cannot recover in this case, because the suit brought by him was for the services mentioned in Romeyn's letter, and such services under the contract were to be furnished free, in consideration of the contract. We shall refer to this in another part of this opinion.

It is strenuously insisted by plaintiff's counsel that there is not a *scintilla* of evidence to show that the settlement did include this claim. Hon. C. I. Walker was the attorney of the defendants in the suit of Romeyn against them, and he did all the negotiating of the settlement in their behalf. Dickinson, Thurber & Hosmer were Romeyn's attorneys. Mr. Walker testified on direct examination that the action was for services rendered by Romeyn in a professional character. He understood the receipt to have been given in settlement of all claims on the part of Romeyn against the defendants. "The paper was drawn for it." On cross-examination, he stated that the suit was not brought on any contract, and did not recollect that the bill of particulars referred to any contract. "I only know it was for professional services against these gentlemen."

"*Q.* You knew, did you not, of the existence of this contract between Romeyn and Davis, by which he was to get one-fourth of the $10,000 of certain moneys which were to come from George H. Hammond?

"*A.* I knew there had been a good many complications growing out of that matter; while I knew something about them generally, I was not familiar with all the details.

"*Q.* You knew at that time that the matter with reference to Hammond had not been settled with the Davises, didn't you?

"*A.* No, sir; I clearly understood that Mr. Romeyn had no further claims against these defendants growing out of that.

" *Q.* Growing out of that contract?

" *A.* Yes, sir.

" *Q.* At the time this settlement was made, was that contract delivered up to be canceled?

" *A.* I don't know.

" *Q.* It wasn't referred to?

" *A.* Not specially, no, sir; but this was a settlement of all claims he had against these defendants. That I have a very clear recollection of.

" *Q.* You mean, don't you, that it was a settlement of all matters in that suit?

" *A.* I understood that it was a settlement of all matters between them in relation to the services.

" *Q.* It could not have been a settlement of anything which was still outstanding and hadn't been determined?

" *A.* I don't know anything about that.

\*　　　\*　　　\*　　　\*

" *Q.* If it had been the intention of the parties in settling this suit to have settled so important a matter as one-fourth interest in a $10,000 contract, would not they have drawn that up in the receipt?

" *A.* That I don't know.

" *Q.* In settling so important a matter as a fourth interest in a $10,000 contract, if you intended to settle anything else except this suit, would it not have been natural for you to have included that in the receipt?

" *A.* The idea was that he had no claim against these defendants growing out of that $10,000 suit, and therefore there was no need of embracing that.

" *Q.* Your idea was based upon the fact that this matter between Hammond and them was still undetermined?

" *A.* I supposed there was something undetermined, but I had no idea that Mr. Romeyn had a claim against these defendants growing out of that. That was my idea.

" *Q.* At that time these defendants had not received any of this money, had they?

" *A.* I don't know anything about that.

" *Q.* Don't you know, as a matter of fact, that a suit was brought by them a long time after this settlement to recover this money?

" *A.* I had nothing to do with that. I don't know anything about that except what I have heard.

" *Q.* Except what you have heard?

"*A*. I have heard of some suit, whether brought by these defendants or not I don't know.

"*Court:* Do you refer to the so-called 'Boston suit?'

"*A*. No, I mean to the suit in this court, brought by the Davises against Hammond, on which they recovered on this $10,000 contract.

"*Q*. But at the time you made this settlement, that matter was still undetermined.

"*A*. I suppose it was.

"*Mr. Corliss:* As far as Mr. Romeyn was concerned, you understood that their relations and contracts were at an end?

"*A*. I understood that everything was at an end between them. I mean Mr. Romeyn's claim for professional services and claims against these defendants was settled. That was all.

"*Mr. Flowers:* That is what you understood? It was simply to settle all claims he had for professional services against them?

"*A*. Well, professional and others,—settling the whole matter, as I understood it. I didn't know, perhaps, that he had any claim growing out of a special contract. I cannot say as to that. But my understanding was that we were settling everything that Mr. Romeyn had against these defendants. That is my idea; but I did not know about all those contracts.

"*Q*. You didn't know anything about the $10,000 contract, or anything of that kind?

"*A*. I may have known it in a general way, that there were some contracts of that sort, but I was not familiar with it.

"*Q*. You didn't think you were settling any claim that had not matured did you?

"*A*. No, sir; I didn't think anything about that. I did think they were settling all claims they had against these defendants."

Judge Hosmer, who acted as attorney for Mr. Romeyn, and drafted the declaration, had no recollection whether this claim was included in the settlement or not.

We think there was some evidence, though it may be slight, to go to the jury on this question. Mr. Romeyn evidently supposed that he had nothing to expect from

this $10,000 agreement, and may have therefore been willing to settle everything in this receipt. His letter would seem to carry the idea that he expected nothing further under his agreement with defendants, and was therefore making this claim against them. If not, his reference to the Boston suit, and the fact that Hammond probably could not be held for the $10,000, would seem to have no relevancy to the main subject-matter and purpose of his letter. We can perceive no injury done to plaintiff by the refusal to give the whole of his fourth request.

The next question to be determined is whether there was any testimony warranting the jury in finding specially, as they did in answer to a special question, that James W. Romeyn had authority from his father to make such a settlement as defendants claim was made.

James W. Romeyn was a son of Theodore Romeyn, and was living in New York at the time of this trial. He has since died. The evidence shows that his father was in feeble health and confined to his house at the time James made this settlement and gave this receipt. The fact that the attorneys of Theodore Romeyn accepted the receipt as a valid settlement of the suit, and received part of the amount paid in such settlement, as evidenced by their receipt, goes very strongly to show that James was at least authorized to settle all matters involved in such suit. The testimony also shows on behalf of the plaintiff that at this time James was associated with his father in business. Mr. Walker testifies that in the settlement of the suit he consulted with James W. Romeyn and also with Theodore Romeyn; that James at the time was an attorney at law in practice with his father. The receipt was prepared in Walker's office, and is in the handwriting of one of his clerks. Judge Hosmer testified that he did not make the settle-

ment on behalf of Mr. Romeyn; that Mr. Romeyn effected the settlement himself. · .

In the absence of any showing that James W. Romeyn was not fully authorized to act for his father in this settlement, we think the jury were justified in the presumption and finding that he had authority to settle all of the claims of his father against these defendants. The charge of the circuit judge in regard to such authority cannot be justly complained of, and he did not err in refusing to give plaintiff's request that James' authority must be shown by *direct* proof, or that the presumption would be that he only had authority to settle the matters involved in the suit.

The plaintiff also requested the court to instruct the jury as follows:

" The receipt offered in evidence by the defendants, given in the suit in the superior court, cannot be claimed to be a release of the claim of said Romeyn under this contract. The claim not having accrued at that time, if it was the intention of the parties to embrace it in the settlement it should have been expressly mentioned in said receipt, and, not being mentioned, the presumption is it was not intended to be included."

It was not error to refuse it. The receipt, using the words "of all accounts," might be claimed, under the facts and circumstances attending its execution, to be a release of all claims of Romeyn against defendants, whether resting upon express or implied contract. We are not prepared to say that there would be any presumption that this claim was not intended to be included in this receipt. It would depend upon what was meant by the words "of all accounts." If there was any legal presumption at all, we should be disposed to consider it in favor of the claim that everything between the parties was intended to be settled by it. The suit was evidently

for professional services rendered in the Alpern case, mentioned in Romeyn's letter; and by the words "and of all accounts," after the words "in full of all claims in the above-entitled cause," it is very certain that it was intended to settle something further than the matters embraced in the suit. But, as we have before said, we think there was no presumption by which the matter could be determined from the receipt standing alone, but that it was for the jury to determine from the receipt, and the facts and circumstances attending its execution, what was settled by it. Whether or not the words "all accounts" would embrace the claim arising out of this contract is not so certain as to create any legal presumption one way or the other. It is an expression which needs explanation. If it had read "all claims and accounts," the presumption of settlement would have reached the claim of plaintiff; but by the use of the word "accounts" it may be asserted, with some show of reason, that an indebtedness then due, and not contingent, was intended; and, on the other hand, it may also, with the same show of reason, be contended that it was meant to cover all claims, contingent or otherwise.

The plaintiff also presented the following request:

"Under the contract in this case, the said Romeyn was under no obligation to commence proceedings against the said Hammond to enforce the collection of the $10,000 mentioned in the contract. The contract simply required him to render services in proceedings to establish the validity of the patents referred to in said contract, and there is no evidence in this case that he refused or neglected to render any services required of him under said contract."

The court gave all of said request, except the last clause, for which it substituted the following:

"And I leave it to you to say if there is any evidence

in this case to show that he had refused and neglected to render any services required of him under said contract."

There was no error in this. It may be that Romeyn was under no obligation to commence proceedings against Hammond to collect the $10,000, but he agreed to "give his professional services, including advice and the trial of matters in court, in any suits or other proceedings to establish the validity of said patents, or to recover damages for their infringement, *without any charge*" against defendants. It appears very clearly from this record that the suit brought by these defendants and Hammond against Alpern and others in the Wayne circuit court came within the contract and agreement. If so, he refused to furnish his services free of charge to these defendants, and violated his contract, not only in planting his suit, but also in receiving money upon a settlement of such suit.

The court also refused to give the following request:

"The fact that said Romeyn expressed doubts as to the recovery of the claim of the defendants against said Hammond cuts no figure in this case. If, as a matter of fact, said claim was a good and valid claim, as it afterwards proved to be by the judgment of this court, and of the Supreme Court of this State, said Romeyn, or his representatives, are entitled to recover their share of it. The defendants cannot retain the fruits of their contract, and avoid paying the share to which said Romeyn was entitled because he expressed doubts as to their right to recover."

This was properly refused as it stood. The expression of doubts by Romeyn would not preclude his recovery, but part of this request was faulty. It did not follow, as the facts were disclosed, that, if the Davis claim against Hammond was good, the plaintiff was entitled to recover one-fourth of it.

We do not think there was any evidence in the case

tending to show that Romeyn became the attorney of Hammond, and, in consequence thereof, advised defendants' attorneys that they had no right of action against said Hammond to recover upon the $10,000 contract, and the court was in error in instructing the jury that if they so found the plaintiff could not recover.

The court on his own motion said to the jury:

" There has been considerable comment by counsel both for the plaintiff and defendant upon the absence of Mr. Hitchcock. Mr. Hitchcock has not appeared here before the court, gentlemen of the jury, and it is for you to say from the evidence in this case what effect that shall have upon you in your deliberations, because it is one of the elements in controversy whether Mr. Hitchcock has interest enough in this case that he should attend court or not."

This reference to Mr. Hitchcock was error. It plainly appears in the case that he, being an assignee of the claim, had no knowledge whatever of the facts in issue; and it was in no wise material to the issue whether he was present in court or not, as long as attorneys were present, authorized to fully represent him in the conduct of the trial.

Complaint is also made of the language of the court in his reference to Mr. Buttrick in his instructions to the jury. Mr. Buttrick is a son-in-law of Theodore Romeyn, and took a very prominent part in the proceedings. He was one of the principal witnesses in the case for the plaintiff, and testified to a conversation with Judge Walker, which, if true, tended to impeach the latter's evidence. It was also shown by his own testimony that he had agreed with the plaintiff to assist him in collecting this claim, and, in pursuance of such agreement, had before the trial sought out both Judge Walker and Judge Hosmer, and had a conversation with each of them, making a memorandum of such talk as soon as he left

them. Such memorandum did not agree with their testimony. The question of his interest in the claim was raised upon the trial, and he was recalled by the defendants and examined as to such interest. He denied that either he or his wife had any interest whatever in the suit. The court, speaking upon his own motion of Mr. Buttrick, said:

"Now, here, gentlemen, I think it is my duty to call your attention to the witness Buttrick. Mr. Buttrick has testified that he has no interest in the case; that his wife, who is the daughter of Mr. Romeyn, and that James Romeyn, who now resides in New York, and is his brother-in-law, have no interest in the case, they having assigned their interest to this plaintiff. It is for you to say, gentlemen, whether Mr. Buttrick has any interest in it or not; it is for you to say why he would be here, and, under the circumstances, why he has been, unless he had an interest. With that I have nothing whatever to do. It is for you, and you only, to say. You may give his presence here such consideration as you think it is entitled to."

Under the circumstances, I do not think this reference to Buttrick was error.

We have endeavored to discuss all the leading allegations of error in the proceedings below. Some of the minor assignments are disposed of by such discussion, and we find no other errors in the record.

The judgment is reversed, and a new trial granted, with costs of this Court to plaintiff.

The other Justices concurred.